UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| RAHTAH MENIOOH,<br><br>    Plaintiff,<br><br>    v.<br><br>HUMBOLDT COUNTY, et al.,<br><br>    Defendants. | Case No. 20-cv-05634-RMI<br><br>**ORDER OF DISMISSAL WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 1 |

Now pending before the court is Plaintiff's conditionally filed complaint and his recently granted request to proceed *in forma pauperis* ("IFP") (dkt. 2). As mentioned in the court's previous order granting Plaintiff IFP status (dkt. 6), the court must screen his complaint under 28 U.S.C. § 1915(e)(2) due to the granting of his request to proceed IFP. *See Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2002) (*per curiam*) (holding that § 1915(e)(2)(B)'s screening requirements also apply to non-prisoners proceeding or seeking to proceed IFP).

**SCREENING STANDARDS**

Pursuant to this statutorily mandated screening process, the court must dismiss a complaint or claim that is frivolous, malicious, fails to state a claim for relief, or seeks damages from defendants who are immune from suit. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (*en banc*). More specifically, screening under § 1915(e)(2) involves the same standard of review employed under Federal Rule of Civil Procedure 12(b)(6). *See Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Therefore, a "mere possibility of misconduct," or an "unadorned [statement that] the defendant-unlawfully-harmed me," falls short of meeting this plausibility standard. *Id.*; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (courts are not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences). Further, *pro se* litigants' pleadings must be liberally construed and any doubts should be resolved in their favor. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). Lastly, leave to amend must be granted if it appears the plaintiff can correct the defects in the complaint. *Lopez*, 203 F.3d at 1130. However, in cases where it is clear that the complaint cannot be saved by amendment, dismissal without leave to amend would be appropriate. *Sylvia Landfield Trust v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013).

**PLAINTIFF'S COMPLAINT**

Plaintiff's complaint – while presenting three modified claims and three new claims – generally rests on the same set of events that form the basis of another case currently pending in this court. *See generally Capolupo v. Ellis et al.*, Case No. 1:18-cv-7458-RMI (N.D. Cal. 2018).[1]

---

[1] *See* Order Dismissing First Amend. Compl. in *Capolupo v. Ellis et al.*, (dkt. 48) at 7-9. On August 3, 2017, Kristin Ellis, a social worker employed by Humboldt County Child Welfare Services ("CWS"), appeared before Judge Hinrichs, declaring a series of statements under penalty of perjury and petitioning for a child welfare warrant. Two days earlier, on August 1, 2017, CWS had received a referral regarding I.A., the infant child of Plaintiff in this case and of Carrie Capolupo (the Plaintiff in *Capolupo v. Ellis et al.*), as well as Carrie Capolupo's son B.M.K (age 4 in 2017) from another father. During the time period in question, the children resided in Manilla, California with Carrie Capolupo and Plaintiff who was denominated as Derrick Andrews in *Capolupo v. Ellis*, but who now appears under the name Rahtah Meniooh in this case. It appears that Derrick Andrews and Rahtah Meniooh are the same person. Plaintiff practices a religion called "Earth Center of Maanu," which involves certain purification rituals. According to the CWS referral, "[t]he baby is bathed daily by the mother, who boils water and pours the boiling water onto the baby's pressure points and artery-fed organs, including the genitals, bottom, belly button, and over the heart and kidneys." The referral went on to relate that Carrie Capolupo does not use conventional doctors and believes that the above-described purification ritual is beneficial for "strengthening the child's organs." The referral also noted that police had been dispatched to this residence on a number of occasions, and that I.A.'s father, Plaintiff, "is very hostile."

The following day, on August 2, 2017, CWS Officers Schneider and Enriquez-Paredes were dispatched to Plaintiff's home in Manilla, accompanied by Humboldt County Sheriff's Office deputies. Once there, Carrie Capolupo was reported as having told a CWS officer that the purification ritual involves boiling water with tea, placing rags into the hot water, and then wrapping the baby with the rags. When the CWS officer asked again to see the child, Carrie Capolupo refused and suggested that she might bring the child to the CWS office at some unspecified time later that day. Later that day, two other social workers

2

Notwithstanding the substantial overlap between this case and *Capolupo v. Ellis et al.*, and without regard to any potential issues related to claim and issue preclusion (given that some of the issues raised in this case have already been decided in *Capolupo v. Ellis et al.*), the court will screen Plaintiff's complaint under the above-described standards. Initially, the court will note that Plaintiff's complaint, brought under 42 U.S.C. § 1983, names three parties in the course of articulating six claims. The defendants named in this action are Humboldt County (hereafter, "County"), Kristen Ellis (a county employee working for CWS), and Sue Capolupo, a private party and the grandmother of Plaintiff's child with Carrie Capolupo. *See* Compl. (dkt. 1) at 2.

In short, Plaintiff's complaint boils down to his allegations that his son's maternal grandmother gave some purportedly false information to CWS officers who, in turn, acted irresponsibly by crediting her account and seeking a court order that provided for entry into Plaintiff's home, and for a medical examination of his child, such as to needlessly investigate the

---

employed by CWS interviewed Robert Keating, the father of Carrie Capolupo's older child B.M.K. Mr. Keating reported to CWS that he has audio recordings of conversations between Carrie Capolupo and her mother, Sue Capolupo (a defendant in the instant case) wherein Carrie Capolupo is heard saying that she has poured boiling water onto her infant child's reproductive organs in order "to keep her from being promiscuous when she is older." Mr. Keating also reported to CWS that when he is speaking on the phone with B.M.K, Mr. Andrews (aka, Mr. Meniooh, the Plaintiff in this case) can frequently be heard yelling in the background and threatening to beat B.M.K.

Thus, a case was opened in the Juvenile Division of the Humboldt County Superior Court, styled as: "In the matter of: I.A. and B.M.K." A petition was filed in that case seeking an order permitting CWS entry into the residence shared by Plaintiff and Carrie Capolupo such as to inspect the premises, conduct an interview with both children, and then to secure a medical examination for I.A. in order to ensure that the child had suffered no injuries. In granting the petition, Judge Hinrichs made the following findings: (1) that there was reasonable cause to believe that the children involved came within the description of the California Welfare and Institutions Code § 300 (bringing within the jurisdiction of the juvenile court matters where it can be shown that a child has suffered, or there is a substantial risk that the child will suffer, serious physical, emotional, or other harm); (2) that the circumstances required a medical examination of I.A. by a licensed medical practitioner with specialized training in diagnosing and treating child abuse in order to determine whether there has been any such abuse; and, (3) that entry into the Plaintiff's home by CWS and or law enforcement investigators was required pursuant to California Welfare and Institutions Code § 328 such that investigators could speak with the children and such that they could inspect the safety of the home in order to determine whether further proceedings in juvenile court may be warranted. Based on these findings, Judge Hinrichs issued an order authorizing CWS to obtain a suitable medical examination for I.A. in order to determine whether the child had been abused or neglected, adding that the examination shall take place within 72 hours unless the child needed protective custody, in which case it was to take place with 72 hours of the effectuation of the protective custody. The order further authorized CWS and law enforcement to enter the children's home, commanding as follows: "[t]he child's parent, guardian, or caretaker shall immediately permit Child Welfare Services and/or Law Enforcement investigators to enter the child's home so they can see and speak with the child and inspect the safety of the home in order to determine whether child welfare services should be offered to the family and to determine whether juvenile court proceedings should be commenced."

health and safety of the child. *See id*. at 2, 5.

In Claim-I, Plaintiff names the County and Defendant Ellis, alleging that they violated his rights under the Fourth and Fourteenth Amendments by making a number of alleged omissions and false statements in petitioning Judge Hinrichs for the child welfare order in question. *Id*. at 6. Plaintiff then enumerates nine statements that he believes were "the moving force" by which Judge Hinrichs found probable cause to issue the order for entry into his home and for a medical examination of his son as follows: (1) that Plaintiff practices a religion called Earth Center of Maanu which involves certain purification rituals; (2) that Plaintiff's infant son is bathed daily by Carrie Capolupo who boils water and pours it onto child due to the belief that it will strengthen the child's organs; (3) that the family does not use conventional doctors; (4) that Plaintiff and Carrie Capolupo are citizens of the universe rather than the United States; (5) that police have been called to the residence previously due to reports that Plaintiff is hostile and that he has previously assaulted Carrie Capolupo; (6) that Plaintiff has allegedly been observed yelling and "saying bad things to the mother and other family members"; (7) that Carrie Capolupo told a social worker that she boils water with tea, soaks rags with that water, and wraps the baby with those rags, but that she hasn't done that since the baby started walking; (8) that Plaintiff once shouted at social workers and Sheriff's deputies from his rooftop, telling them to learn about what they had historically done to his people; and (9) that there was reasonable cause to believe that Plaintiff's home environment constitutes a danger to the health and welfare of the two children living there. *See id*. at 6-7.

Plaintiff contends that the above-described statements constitute slanderous falsehoods, made by a private party complainant (Sue Capolupo) that were used by the County and Defendant Ellis to cause the alleged violation of Plaintiff's Fourth Amendment rights. *Id*. at 7. Plaintiff contends that Sue Capolupo's statements to CWS social workers were made in reckless disregard for the truth, and that Defendant Ellis's inclusion of those statements (as well as some allegedly material omissions) in the ensuing child welfare proceedings was likewise made in reckless disregard for the truth. *Id*. at 7-8, 9. In short, Plaintiff submits that the County and Defendant Ellis either knew, or should have known, that the information presented to Judge Hinrichs was false,

4

and had they conducted a more thorough investigation (such as consulting the materials available on the website for the Earth Center of Maanu, or a publication known as Firefly Magazine) they would have known that these "healing baths" were entirely harmless and that Plaintiff's child did not need to be the subject of the child welfare order that was issued by Judge Hinrichs. *Id*. at 7-10.

To the extent that Claim-1 addresses the alleged falsehoods and omissions attributable to Defendant Ellis and on which Plaintiff contends that the order issued by Judge Hinrichs was based – when a person knowingly or with reckless disregard for the truth includes material false statements or omits material facts in an affidavit submitted in support of a warrant application, he or she may be liable under § 1983 for a Fourth Amendment violation. *See Franks v. Delaware*, 438 U.S. 154, 157 (1978); *Butler v. Elle*, 281 F.3d 1014, 1024-26 (9th Cir. 2002); *Cassette v. King County*, 625 F. Supp. 2d 1084, 1087 (W.D. Wash. 2008). In order to support a 42 U.S.C. § 1983 claim on this theory, a plaintiff must show that the defendant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause. *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002). "Omissions or misstatements resulting from negligence or good faith mistakes will not invalidate an affidavit which on its face establishes probable cause." *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009).

To the extent that Claim-1 names the County as a defendant – local government entities are considered "persons" for the purposes of being subject to liability under § 1983 in cases where a Plaintiff identifies an official policy or custom of the local government entity as a cause of the alleged constitutional tort. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). Thus, a municipality may not be held vicariously liable for the unconstitutional acts of its employees under the theory of *respondeat superior*. *See Board of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 691. In order to properly impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must establish: (1) that the plaintiff possessed a constitutional right of which he was deprived; (2) that the municipality had a relevant policy, custom or practice; (3) that the policy, custom or practice amounted to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy, custom or practice was the moving force behind the constitutional violation. *See Plumeau v. School Dist. # 40*, 130 F.3d 432, 438 (9th

1  Cir. 1997); *see also AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012).
2  It is not enough for Plaintiff to simply allege that some policy, custom, or practice exists that
3  somehow caused the alleged constitutional violations (*see AE ex rel. Hernandez*, 666 F.3d at 636-
4  37); instead, Plaintiff must allege sufficient facts regarding the specific nature of that policy,
5  custom or practice such as to allow the County to effectively defend itself, and those alleged facts
6  must plausibly suggest that Plaintiff is entitled to relief against the County. *See id*. at 637.
7  Additionally, Plaintiff may also allege *Monell* liability on the basis of inadequate training or a
8  failure to train, because "the inadequacy of police training may serve as the basis for Section 1983
9  liability only where the failure to train amounts to deliberate indifference to the rights of persons
10 with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388
11 (1989). The court will also note that a failure to train may support a *Monell* claim only when non-
12 conclusory, non-speculative allegations of flawed training, or the lack of training, has itself caused
13 the constitutional violation, as opposed to situations where an errant employee caused a
14 constitutional violation, despite adequate training, because such a distinction ensures that
15 responsibility lies with the correct entity. *See Waggy v. Spokane Cnty.*, 594 F.3d 707, 713 (9th Cir.
16 2010).
17         Here, Claim-1 simply ropes the County into a set of allegations allegations that only
18 pertain to Defendant Ellis's allegedly flawed presentation to Judge Hinrichs but that fail to include
19 any support for a municipal liability claim in line with the standards described above. However,
20 because it appears that this deficiency could conceivably be cured on amendment, Claim-1 is
21 dismissed as to the County without prejudice. As to Defendant Ellis, the court finds that the
22 allegations in support of her reportedly false statements and alleged material omissions are
23 conclusory and speculative. First, Plaintiff contends that Sue Capolupo's concerns about the health
24 and welfare of Plaintiff's son were unfounded and that Defendant Ellis's crediting of her account
25 was the linchpin of Judge Hinrich's probable cause finding. However, Plaintiff overlooks the fact
26 that the father of Carrie Capolupo's other son, B.M.K., was also a complainant who expressed
27 substantially similar concerns to CWS personnel. Contrary to his suggestions that CWS personnel
28 failed to investigate the matter properly before seeking the order in question from Judge Hinrichs,

CWS personnel did try to investigate further by requesting to see Plaintiff's son on two occasions during which they were turned away by Plaintiff or Carrie Capolupo, and that on one of those occasions Carrie Capolupo agreed to bring the infant child to CWS's offices such that they may see whether or not he had suffered any injuries, but in the end she failed to do so. Thus, the court finds that it is insufficient for Plaintiff to simply contend that probable cause would not have existed if Defendant Ellis had simply checked the website for the Earth Center of Maanu or if she had simply consulted a publication known as Firefly Magazine because mere negligence, good faith mistakes, or an omission of this sort will not invalidate a warrant. In essence, as to Defendant Ellis, Claim-1 boils down to Plaintiff's displeasure that CWS employees did not simply believe the accounts of Plaintiff and Carrie Capolupo over the conflicting accounts of Sue Capolupo and the father of Carrie Capolupo's other child. This, coupled with the assertion that materials contained on the website for the Earth Center of Maanu and some unspecified matter contained in some unspecified issue of Firefly Magazine would have cleared up any confusion, is a clear manifestation of the type of unacceptably conclusory and speculative pleading that was described above. While the court is skeptical that Plaintiff will be able cure these deficiencies by amendment, because it is not completely out of the realm of imagination, the court will afford Plaintiff an opportunity to do so. Accordingly, as to Defendant Ellis, Claim-1 is likewise dismissed without prejudice.

In Claim-2, naming the County and Defendant Ellis, Plaintiff contends that his First Amendment rights were violated when the County and Defendant Ellis retaliated against him for not letting CWS personnel voluntarily check his son for injuries and by securing what Plaintiff characterizes as a "general warrant" based only on retaliatory motives. *See* Compl. (dkt. 1) at 10-11. Initially, the court will note that simply calling the order issued by Judge Hinrichs a "general warrant" does not make it so. A "general warrant" is one that derogates the Fourth Amendment's particularity requirement by permitting "a general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). Plaintiff's allegations do not establish any such defect in the child welfare order in question. Then there is Plaintiff's suggestion that when Defendant Ellis petitioned Judge Hinrichs for an order authorizing entry into Plaintiff's

1    home, it was merely in retaliation for having earlier been turned away by Plaintiff and Carrie
2    Capolupo when CWS social workers sought to investigate the health and welfare of their infant
3    child. This suggestion is not only a conclusory, it is also an unreasonable and unfounded
4    inference. *See Sprewell*, 266 F.3d at 988 (courts are not required to accept as true allegations that
5    are merely conclusory, unwarranted deductions of fact, or unreasonable inferences). To establish a
6    First Amendment retaliation claim, a plaintiff must show: (1) that he or she engaged in
7    constitutionally protected activity; (2) that the defendants' resulting actions would chill a person of
8    ordinary firmness from continuing to engage in the protected activity; and, (3) that the protected
9    activity was a substantial or motivating factor in the defendants' conduct. *See Pinard v. Clatskanie*
10   *Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006); *see e.g., Skoog v. County of Clackamas*, 469 F.3d
11   1221, 1235 (9th Cir. 2006) (plaintiff stated a claim for First Amendment retaliation by asserting
12   that a police officer had obtained and executed a search warrant against him to punish him for
13   filing a lawsuit against another police officer).
14         Regarding Plaintiff's allegations pertaining to Defendant Ellis's alleged retaliation against
15   him for the exercise of constitutionally protected activity, as mentioned, Plaintiff goes no further
16   than to rely on conclusory allegations, unwarranted deductions of fact, and unreasonable
17   inferences. Because Plaintiff fails to properly allege facts that would support the second and third
18   elements of a First Amendment retaliation claims as described above, Claim-2 must be dismissed
19   as to Defendant Ellis. As it relates to the County, Claim-2 makes no mention of any policy or
20   custom or failure in training that could be alleged to have caused the alleged violation of his rights
21   – indeed, Claim-2 contains no allegations whatsoever pertaining to any of the above-discussed
22   matters pertaining to the establishment of municipal liability. *See* Compl. (dkt. 1) at 10-11.
23   Therefore, Claim-2 is dismissed as to the County for failure to state a claim. Further, while the
24   court is skeptical that Plaintiff will be able to state a First Amendment retaliation claim against
25   Defendant Ellis, let alone against the County, because it is not completely beyond the realm of
26   imagination that these defects could be cured by amendment, Claim-2 is dismissed without
27   prejudice.
28         In Claim-3, Plaintiff names the County and Defendant Ellis, while giving his claim the

following title: "[d]elibertate [i]ndifference [c]laim." *See* Compl. (dkt. 1) at 12. By way of substance, Claim-3 engages in a rambling discussion of what appears to be two policies of Humboldt County pertaining to child welfare investigations and appears to complain – in difficult to understand terms – about Plaintiff's generalized disagreement with those policies. *See id*. at 12-16. In essence, Claim-3 appears to be a confused mixture of several unrelated legal doctrines attended with inartfully pleaded allegations that do not appear to be tethered to any cognizable claim. First, it appears that Plaintiff may have confused the usage of the term, "deliberate indifference," as used in municipal liability context with its usage in the Eighth Amendment context. *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994) ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."); *but see*, *Plumeau*, 130 F.3d at 438 (*Monell* claims under § 1983 require a showing, *inter alia*, that a constitutional tort was caused by a relevant municipal policy, custom or practice which amounted to a deliberate indifference to the rights that were violated). Because Claim-3 is little more than a scattershot discussion of what Plaintiff claims to be provisions of "State Codes" that are adopted by the County as policy, it appears that Claim-3 is Plaintiff's attempt at articulating a municipal liability claim under *Monell*. There are several problems with Claim-3. First, Plaintiff has not limited himself to only directing this claim against the County, but has also directed it against Defendant Ellis. However, it goes without saying that because municipal liability claims are ancillary to and dependent upon individual liability claims, "there is no individual liability under a *Monell* claim." *Ventura v. Pough*, No. C 05-01814 JF (PR), 2008 U.S. Dist. LEXIS 68522, at \*14 n.5 (N.D. Cal. Sep. 3, 2008). For this reason, Claim-3 must be dismissed to as to Defendant Ellis for failing to state a claim. Furthermore, even if the court were able to overlook the fact that Plaintiff's discussion under Claim-3 is unclear, incomprehensible, and unfocused, the court cannot overlook the fact that because Plaintiff's individual liability claims under § 1983 have been dismissed, so too must the municipal liability claim be dismissed because "there can be no municipal liability when there is no [foundation of] individual liability." *Williams v. Child Protective Servs.*, No. EDCV 07-1632-ABC (OP), 2011 U.S. Dist. LEXIS 164933, at \*14 (C.D. Cal. June 9, 2011); *see also Figueroa v. City of Fresno*, No. 1:15-cv-00349-DAD-BAM, 2017

U.S. Dist. LEXIS 19408, at *24 (E.D. Cal. Feb. 10, 2017) (same). As was the case above, because the court is not convinced that Plaintiff could not conceivably remedy these defects by way of an amendment, Claim-3 is dismissed without prejudice.

Plaintiff's remaining three claims – Claims 4 through 6 – all arise under state law and are therefore dependent on the exercise of supplemental jurisdiction. *See* Compl. (dkt. 1) at 16-18. In each of those claims (for defamation, false light publicity, and intentional infliction of emotional distress), Plaintiff names the County, Defendant Ellis, and Defendant Sue Capolupo. *Id*. Also, as was the case with Plaintiff's § 1983 claims, Plaintiff's state law claims are similarly defective in that they name the County without alleging any of the elements of municipal liability discussed above; further, as to the individually named defendants, all of Plaintiff's state law claims rest on conclusory allegations and unwarranted deductions of fact.

As a threshold matter, however, the court will note that the exercise of supplemental jurisdiction over Plaintiff's remaining state-law claims is committed to the discretion of the court. *See Foster v. Wilson*, 504 F.3d 1046, 1051-52 (9th Cir. 2007) ("The decision whether to continue to exercise supplemental jurisdiction over state law claims after all federal claims have been dismissed lies within the district court's discretion.") (citing 28 U.S.C. § 1367(c)(3); *see also Fang v. United States*, 140 F.3d 1238, 1243-44 (9th Cir. 1998)). Despite the fact that the issue is committed to the court's discretion, the Court of Appeals for the Ninth Circuit has repeatedly counseled district courts to decline to exercise supplemental jurisdiction over state-law claims after the federal claims have been dismissed before trial. *See, e.g.*, *Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir. 1985) ("Generally, dismissal of federal claims before trial dictates that the pendent state claims should also be dismissed."); *Souch v. Howard*, 27 F. App'x 793, 795 (9th Cir. 2001) ("When all federal claims have been dismissed before trial, the interests promoted by supplemental jurisdiction are no longer present, and a court should decline to exercise jurisdiction over state-law claims."); *see also Wilson v. Frates*, No. 3:16-cv-01690-BR, 2018 U.S. Dist. LEXIS 17465, at *25-26 (D. Or. Feb. 2, 2018). Accordingly, Claims 4 through 6 are dismissed without prejudice.

//

**CONCLUSION**

For the reasons stated above, Plaintiff's Complaint (dkt. 1) is **DISMISSED WITHOUT PREJUDICE**. Plaintiff is hereby **ORDERED** to file an amended pleading in light of the instructions provided herein, if at all, no later than 30 days from the date of this Order. The failure to file an amended complaint will result in a dismissal of the case with prejudice.

**IT IS SO ORDERED.**

Dated: September 15, 2020

ROBERT M. ILLMAN
United States Magistrate Judge